17 So.2d 456

## GILMER v. STATE.

### 6 Div. 2.

Court of Appeals of Alabama.

March 28, 1944.

Horace C. Alford, of Birmingham, for appellant.

Wm. N. McQueen, Acting Atty. Gen., and Frank N. Savage, Asst. Atty. Gen., for the State.

BRICKEN, Presiding Judge.

This case needs no extended discussion, notwithstanding the voluminous briefs which have been filed by counsel for respective parties.

Under the law, any person who steals any personal property of the value of five dollars or more from the person of another, is guilty of grand larceny. This particular offense was charged in the indictment against this defendant wherein it is specifically averred that this accused "feloniously took and carried away from the person of Jerry Peters, twenty-two dollars, (properly described) the personal property of Jerry Peters," etc.

It is without dispute in the testimony that the alleged offense was committed, at the time and place in question; the defendant insisting, upon the trial of this case in the court below, that he was not the person who committed the act complained of. Therefore the material and controlling question in this case is as to the identity of person who committed the unlawful act. As to this there was positive direct testimony tending to show that Isaac Gilmer, this appellant, was the actual person who committed the larceny. The alleged injured party, Jerry Peters, testified:

"I first saw this defendant at the 16th Street Baptist Church about June 23rd of 1942. That church is located at 6th Avenue

and 16th Street North, in the city of Birmingham and Jefferson County, Alabama. I first noticed him there in the church about ten or ten-fifteen o'clock, and there was a good crowd there at the time I saw him. About ten o'clock that evening, just as the services adjourned, we started out and this man was right behind pressing against me, like he was staggering drunk, and I was trying to get out of the way. Some more was in front of him practically doing the same thing; and at the same time I felt my pocketbook had gotten away and I made an outcry about my pocketbook being gone. My daughter was there and we were out in the aisle, as I had left my seat and was going out of the building. There were a good many people going out at the same time behind me and in front of me. When I made an outcry this boy here was right behind me, and my daughter asked me had I lost my pocketbook, and when I said I had she rushed up and says 'I believe this man got it,' and she grabbed this man. My daughter gave my pocketbook back to me; in it was twenty-two dollars. This was a bill-fold, the same one I now have (bill fold handed to Asst. Solicitor Hawkins). My daughter pulled this billfold out of this man's pocket,—this man here (indicating the defendant). This is the pocketbook I had in my hip pocket, and I saw her when she got it back. She grabbed this man, put her arms around his neck and grabbed him against her and held him until he commenced choking. There was a crowd of us just holding him until the law come. * * * I got a good look at him at that time. The next time I saw him was at the south side jail when the law carried me over there. I stayed there until the police came, and I noticed at that time that he had one arm off. * * * This negro here was right up against me, and my daughter grabbed him. There were people between this negro and her when she rushed over to him. I saw where she got the pocketbook from."

On cross-examination of this witness he reiterated several times that he distinctly recognized this appellant as the person who stole his pocketbook.

Witness Annie Mae Lawton, the daughter of Jerry Peters (injured party), corroborated in every respect the foregoing quoted testimony of her father. Among other things she testified:

"The first I heard about any pocketbook was when I saw my father feeling his pocket, and I asked him if they got his pocketbook and he said yes. I saw this boy there that night. We were all in the crowd together, and when he said 'He got my pocketbook' I grabbed this man. He was trying to slip around through the crowd and I pulled him back by his collar and took the pocketbook out of his pocket,—out of this man's pocket. I asked my father 'Is this your purse,' and he said 'Yes' and I gave it back to him. We were going out on the right, near the vestibule, when I caught hold of him. When he said he had his pocketbook we were just inside the door, and this man was trying to get through the crowd when I grabbed him and pulled him back. * * * I just took it out of his pocket. * * * I was holding this man there, and when he made an attempt to get out of his coat I grabbed him and locked my leg around his, and about that time a group of men took him and carried him to the basement. * * * I gave a description of this man to the officers that night. The next time I saw him was in August, about the 3rd probably, on a Sunday afternoon, at the south side jail; and at that time I identified him as being the man that I took the pocketbook from, out of his pocket, at the church."

Upon the trial there was other evidence tending to show that this appellant was present at the church at the time the larceny complained of was committed. The defendant testified in his own behalf and stated he was not the man who committed the larceny and that he was not at the church, the scene of the crime, that night at all.

■ From the foregoing, and from other evidence of like import, as stated, the sole question upon the trial of this case was the identity of the perpetrator of the offense. This, of course, was for the jury to decide and determine, and we are clear to the opinion the evidence adduced was ample in every way to warrant and justify the jury in the verdict returned by them.

Admittedly, as is contended by able counsel for appellant, the trial of this case in the court below was permitted to take a wide scope of inquiry. However, it affirmatively appears this was allowed by the court for the sole purpose of identity of the accused. This affirmatively appears by the following statement of the learned trial judge, as appears in the record wherein the court stated:

"The Court: I want the jury to understand that we are trying this defendant on this particular charge, in which it is claimed by the State that the defendant committed grand larceny on Jerry Peters at this church; not this other case. And any other offenses that this defendant might have been guilty of couldn't be used for the purpose of establishing the guilt of the defendant in this case for which he is now on trial because every case must stand on its own facts; and evidence of similar offenses recently committed, in case they are committed, and the evidence satisfies the jury beyond a reasonable doubt that they were committed, cannot be used for the purpose of establishing his guilt in this particular case, but it is to go to his identity as to whether he is the same man that is charged with having taken the purse in this particular case. As I understand it, the defendant here claims he is not the man that took the purse belonging to Peters, if it was taken. The defendant claims that if it was taken, it was taken by some one else. Now, for the purpose of fixing the identity of the defendant, or tending to prove his identity,—the admission of evidence of other alleged offenses of a similar kind, is for the purpose of showing or tending to show that he is the same man. It is for the jury to say whether he is the man or whether he had anything to do with it. That all goes to you for your proper consideration in this case."

 Error, if any was committed in this connection, in our opinion was harmless and under Rule 45, which should apply, we would not be justified or warranted in placing the court in error. The following authorities, cited in brief of the Attorney General, are also conclusive of this question. 22 C.J.S., Criminal Law, page 1097, § 684; Jackson v. State, 229 Ala. 48, 155 So. 581; Sweeney v. State, 25 Ala.App. 220, 143 So. 586; Jackson v. State, 18 Ala.App. 259, 89 So. 892; Gardner v. State, 17 Ala. App. 589, 87 So. 885; Gibson v. State, 14 Ala.App. 111, 72 So. 210.

We have heretofore stated that the defendant elected to, and did, testify in his own behalf in this case. Upon his cross-examination he was examined touching his conviction for crime. This of course was allowable. Code 1940, Title 7, Sections 434, 435. And in response to proper question defendant testified:

"On the 3rd of May, 1924, I was convicted in Ionia, Michigan, for the offense of larceny from the person, and was sentenced to two to five years in the penitentiary. And I was convicted on January 10th, 1930, at Jackson, Michigan, for larceny from the person, and sentenced to one to five years. I was convicted in Tennessee on April 25th, 1936, for robbery and sentenced to five years in the penitentiary. On June 5th, 1940, I was arrested and charged with grand larceny, but I was convicted of petit larceny and sentenced to twelve months and ninety-two days in the penitentiary."

We find no error in the action of the court in refusing to defendant the several written charges appearing in the record. We note that the court, at the request of defendant, gave about fifteen written charges requested by the defendant, and these given charges, in connection with the oral charge of the court, which charge was full, fair and complete, covering some several pages of the transcript fairly and substantially covered such of the refused charges as properly stated the law.

The trial court properly, and without error, refused and denied defendant's motion for a new trial.

No reversible error appearing upon the trial of this case, the judgment of conviction from which this appeal was taken will stand affirmed.

Affirmed.